UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CYNTHIA MOELLER,

             Plaintiff,

v.                                          Case No. 5:10-cv-457-Oc-34TBS

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

             Defendant.

_____

## REPORT AND RECOMMENDATION[1]

      Pending before the Court is Defendant's Dispositive Motion For Summary Judgment (Doc. 29) with supporting exhibits (Docs. 31 & 32), to which Plaintiff filed a response in opposition (Doc. 34); and Plaintiff's Motion For Summary Judgment (Doc. 30) to which Defendant filed a response in opposition (Doc. 33). The motions are fully briefed and ripe for review.[2] On November 16, 2011, the Court heard oral argument on the cross-motions for summary judgment, during which counsel agreed that the case should be resolved on these motions because there are no disputed issues of material fact. For the reasons discussed below, Defendant's Dispositive Motion For Summary Judgment (Doc. 29) should be GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 30) should be DENIED.

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] On December 7, 2010, this matter was referred to the assigned Magistrate Judge for preparation of a Report and Recommendation regarding an appropriate resolution of the case. (Doc. 10). This case was reassigned to the undersigned on July 29, 2011. (Doc. 26).

## I.  BACKGROUND[3]

This is an action for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiff, Cynthia Moeller ("Moeller"), who was employed in a technical support position with the East Brunswick Township Board of Education, had long term disability ("LTD") coverage under Group Policy No. 00358980-HC (the "Plan") issued and administered by Defendant Guardian Life Insurance Company of America ("Guardian"). (Doc. 1, Exhibit A).  Moeller stopped working as of November 25, 2002 and filed a claim for LTD disability benefits on February 23, 2003.

For the first 24 months of a claimed disability, the Plan conditioned eligibility for LTD benefits on the claimant's submission of proof that she was prevented by illness or injury from performing, on a full-time basis, "the major duties of her own occupation" ("own occupation period").  (Doc. 1, pages10-11, 17).  Thereafter, eligibility for continued benefits required proof that the claimant was unable to perform, "on a full-time basis, the major duties of any gainful work."  (Doc. 1, page 17).  The Plan explicitly granted Guardian "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." (Doc. 1, page 20).   The Plan provided that if a claim was approved and benefit payments commenced, benefits would cease if the claimant ceased to be disabled or failed to provide requested proof of on-going disability. (Doc. 1, page 12).

According to Moeller, she began to have symptoms of progressive sensory polyneuropathy, with initial symptoms in the form of "pins and needles" in her feet which progressed to total loss of feeling by August 2002. (G. 506).  In November 2002,

---

[3] All citations to the administrative record are "G." followed by the appropriate page number(s).

Moeller saw neurologist, Gerald Ferencz, M.D. (G. 518-23). Dr. Ferencz ordered an MRI and EMG/nerve conduction study which confirmed Moeller was suffering from polyneuropathy. (G. 518-23). Under Dr. Ferencz's direction, Moeller was taken off of work completely. (G. 5). Her last day of work was November 25, 2002. (G. 525).

On February 23, 2003, Moeller submitted her disability claim form to Guardian, claiming that she had been unable to work since November 25, 2002. (G.524-25). In support of her claim, she submitted an Attending Physician's Statement ("APS") completed by Dr. Ferencz. (G. 501-02). Dr. Ferencz advised that Moeller had a "progressive sensory motor polyneuropathy with loss of peripheral sensation affecting balance & coordination of gait [and] operating a motor vehicle." (G. 476-77). Moeller's claim for LTD benefits was approved and Guardian began paying benefits effective February 24, 2003. (G. 492).

On November 12, 2004, Dr. Ferencz completed an APS, identifying diagnoses of polyneuropathy and ataxia, with subjective symptoms of "numbness, pain, difficulty standing, [and] difficulty [with] driving." (G. 408-09, 439). Dr. Ferencz also mentioned an abnormal nerve conduction examination. Id. On December 1, 2004, Dr. Ferencz declined to complete a Physical Capabilities Evaluation ("PCE"), stating "I do not do physical capabilities." (G. 31, 410).

In October 2005, Moeller moved to Florida. (G. 38, 385). Shortly after her move, Kathleen Hotchkiss-Wager, MA, CRC, LPC telephonically interviewed Moeller. (G. 385-86). Moeller described her typical day, which included doing some housework and attending to her children. Plaintiff reported that she was unable to return to work due to limitations in her ability to stand and carry things as well as poor balance. She stated

3

that she "does not know if she could work a whole day due to her pain coming and going throughout the day" and the sudden onset of pain, would make it difficult for her to work with others, even in a sedentary position.

With Guardian's assistance, Moeller applied for and was granted Social Security disability benefits in February 2006. (G. 17, 19-24, 44).

On May 10, 2006, Dr. Ferencz completed an APS, stating that Moeller's diagnosis was "idiopathic progressive polyneuropathy" characterized by loss of sensation in the feet and legs, and by "balance disturbance." (G-349-50). On May 22, 2006, Moeller reported to Guardian that she had trouble standing, walking, driving, balancing, and carrying things. (G. 363). She reported pain in her feet and "almost constant" numbness in her legs. (Id.)

In Florida, Moeller was treated by neurologist, Beena Stanley, M.D. (G. 54-55). On October 10, 2006, Dr. Stanley's neurological examination showed normal strength in both upper extremities and grossly normal sensations, with absent reflexes at the ankles and increased vibration threshold in the feet. (G. 360). Moeller reported to Dr. Stanley that she was unable to sleep because her legs would start burning. Dr. Stanley increased Moeller's dosage of Lyrica and prescribed Lunesta for sleep.

Guardian requested that Dr. Stanley complete an APS and a PCE. In November 2006, Dr. Stanley provided a partially completed APS, stating that Moeller had peripheral neuropathy for which she was being treated with Lyrica. (G. 307-08). The PCE form was returned by Dr. Stanley with notations that she was unable and not qualified to fill out the form. (G. 309-10).

4

In April 2007, Moeller was seen by Dr. Stanley. (G-359).    On examination, Dr.

Stanley noted Moeller's difficulty with tandem gait and an inability to walk on toes and

heels; decreased sensation mid calf downwards; and reflexes 1+ in the upper

extremities and at the knee and absent at the ankle.  (G. 359).  Moeller reported that

Lyrica, Anodyne, Elavil and Neurontin had not helped her and Dr. Stanley started her

on Cymbalta.  In August 2007, Guardian noted that Moeller's daily activities included

driving almost daily, working on the computer, laundry, shopping, cooking and paying

bills. (G. 59).

Due to limited information from Dr. Stanley, Guardian ordered a Functional

Capacity Evaluation ("FCE") which was conducted by Lee Jacobson, MRT ("Master of

Physical Therapy")  on September 27, 2007. (G. 263-68).    Mr. Jacobson performed a

number of tests to evaluate Moeller's physical capabilities, including: (a) cervical spine

range of motion; (b) trunk range of motion; (c) shoulder flexion, extension and

abduction; (d) hip flexion, adduction, extension and rotation; (e) wrist flexion and

extension; (f) radial deviation and forearm supination; (g) knee flexion and extension;

(h) ankle plantarflexion and dorsiflexion; (i) gross motor strength; (j) fine motor dexterity;

(k) capacity for sitting, standing and walking; (l) lifting from floor to waist; (m) lifting from

waist to shoulder; (n) carrying with one hand and both hands; (o) balancing; (p)

kneeling, squatting, crawling, and ladder climbing; and (q) grip strength in five different

hand positions. Id.

Mr. Jacobson noted that Moeller demonstrated "multiple areas of inappropriate

illness/behavior with elevated Ransford, McGill's, Borg, and a high rating of self

perceived limitation of function per Ankle/Foot Function Index score add together for

positive trends for inappropriate illness/behavior noted."  (G. 263).  He further noted "[m]ultiple areas of inconsistency" of effort. (G. 264).

The FCE report stated that Moeller was capable of sitting for 6-8 hours in a day with the opportunity to move and change position; standing 8 hours in a day with frequent rest periods available; and walking 8 hours in a day with frequent rest periods available.  It further found Moeller capable of lifting 15 pounds frequently and 20 pounds occasionally.  Mr. Jacobson concluded that Moeller was capable of sedentary to light level work.  (G-265, 267).  Around the time of the FCE, Guardian had video surveillance conducted in an effort to document Moeller's functionality. (G-241-48; Doc. 16).

Guardian then performed a Transferable Skills Analysis ("TSA") and a Labor Market Survey ("LMS") in the Edison, NJ metropolitan area to determine whether there were positions available within the confines of Moeller's physical capabilities.  (G. 249-56).  Guardian used a computerized search program called OASYS to identify four occupations Moeller could perform:(a) Computer Support Specialist; (b) Credit Analyst; (c) Business Operations Specialist; and (d) Word Processing & Clerical First Line Supervision.[4]

On October 17, 2007, Guardian sent a copy of the FCE to Dr. Stanley for her review and comments regarding the FCE findings and her opinion as to whether she agreed that Moeller was capable of working in a sedentary capacity.  (G. 232).  While

---

[4] According to Guardian these occupations are consistent with sedentary to light duty work, predominantly sitting, within Moeller's education, training and experience level and with wages commensurate with 80% of Plaintiff's "indexed insured earnings." Plaintiff's indexed insured earnings are $58,606 per year; thus, the target wage at 80% equals $46,886 per year or $901.66 per week or $22.54 per hour.

agreeing with the functional capabilities, Dr. Stanley noted that Moeller reported having pain during and two days after the FCE.   When asked if Moeller had the functional capacity to perform sedentary work, Dr. Stanley wrote that "[patient] says she has periods of consistent pain and not able to do sedentary work for [more than] 2 h[ours]."

On December 21, 2007, Dr. Stanley assessed Moeller with small fibrosensory neuropathy and diabetes; noted that while Moeller could stand on her toes and heels, her reflexes were 2+ in her upper extremities, trace in the knees and absent at the ankles; she had decreased sensation mid calf downwards; and she was taking Cymbalta 20 mg daily.  (G. 231).

On January 9, 2008, Guardian denied Moeller's continuing LTD benefits as of December 23, 2007, stating that she was now capable of performing "the major duties of any gainful work on a full-time basis, and the Functional Capacity Evaluation has assessed you at a sedentary work capability level, you are no longer considered 'disabled' as defined under the terms of this group plan." (G. 235).  In explaining how it reached its decision, Guardian relied upon the FCE that assessed Moeller's level of work capability at sedentary duty work and the TSA-LMS which identified several occupations Moeller could perform.  In addition, Guardian explained that its determination was different from the decision of the Social Security Administration because "Social Security Disability decisions are based on federal statutes and Guardian's disability decisions are governed by provisions of the contract under which you are insured by your employer."

Moeller appealed Guardian's benefits termination decision asserting that: (a) the LMS was invalid because she had not lived in New Jersey for over 2 ½ years; (b) her

peripheral neuropathy caused near-constant pain; (c) she had severely sprained her

ankle; (d) she had gone into anaphylactic shock due to fire ant bites that she did not

feel; (e) she had lost a toenail from a severe infection that occurred following an injury

to the toe; and (f) her condition was getting worse. (G. 219)

Moeller returned to Dr. Ferencz on April 2, 2008, and he performed a

comprehensive neurologic reevaluation. (G. 220).  Dr. Ferencz also reviewed the FCE

and stated that it "reveals some evidence of inconsistency" which "is of unclear clinical

significance."  Dr. Ferencz said:

> The patient has a clearly progressive idiopathic polyneuropathy with
> confirmation of progressive nerve damage on follow-up EMG studies
> done on February 8, 2008, compared to prior studies.  The patient has
> significant loss of motor nerve responses as well as sensory nerve
> responses.  These are consistent with the patient's complaints.  Her
> pain is a significant factor regarding performing work in a cognitive
> field, as this will likely result in significant distraction and inattention.
> The patient has medication, which may be initiated for treatment of
> pain that certainly can cause drowsiness as well as have the potential
> for interfering with cognitive activities.  Activities of daily living at this
> time are not fully affected, but it is expected that in the future driving
> will probably be limited and use of hand controls in an automobile
> would be necessary.
>
> In addition, the patent's gait and balance have significantly progressed
> resulting in her inability to regularly perform any type of job, which
> would require definite requirements for walking and standing or
> carrying objects.

On June 9, 2008, at the request of Guardian, Lee J. Harris, M.D., a physician

Board Certified in Psychiatry & Neurology, Clinical Neurophysiology, and

Electrodiagnostic Medicine performed a peer review of Moeller's entire claim file, "to

determine if the medical records and recent diagnostic studies support the physical

limitations and restrictions that would preclude a return to work full time in any gainful

work." (G. 179-80, 201-03).  Based on his review of the medical records, Dr. Harris opined:

> Review of the above medical records on Cynthia Moeller would appear to indicate a diabetic sensory motor polyneuropathy which has progressed somewhat in degree between 2002 and 2008 which is not surprising.  The functional capacity evaluation indicated an ability to work in a light to light-medium capacity.  The results of the evaluation are clouded by inconsistencies and inappropriate reporting of pain, likely representing exaggeration of her symptoms.  Dr. Ferencz indicates the inconsistencies are of unclear clinical significance, however I would beg to differ and indicate that the significance of the inconsistencies is that they cast a doubt on the credibility of the claimant's expressed subjective symptoms.  Dr. Ferencz's assertion that her medication could cause drowsiness and interfere with cognitive function would not appear to be supported by the report of Dr. Stanley, which indicates only a low dose of Cymbalta, as well as medication for diabetes.  The functional capacity evaluation indicates the claimant is able to work with some restriction, I don't see anything in the record, including the EMG study, which would prevent her from working in some capacity, with no evidence that she is totally disabled from her diabetic neuropathy.

Guardian sent a complete copy of the peer review to Dr. Stanley and Dr. Ferencz on two occasions seeking their comment. (G. 174, 175, 177, 187-88, 194-95). On August 14, 2008, a representative from Dr. Ferencz's office called Guardian stating that Dr. Ferencz had no further opinion.  (G. 174).  Guardian never heard from Dr. Stanley.

On September 5, 2008, Guardian notified Moeller of its final determination that benefits were not payable beyond December 23, 2007.  (G. 165-71).  Moeller then initiated this action seeking to overturn Guardian's decision to discontinue payment of LTD benefits to her.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party. <u>See Samples on Behalf of Samples v. Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." <u>Rollins v. Techsouth</u>, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## III.  DISCUSSION

The Eleventh Circuit has established a "well-defined series of steps" for district courts to follow in "reviewing a denial of benefits decision in an ERISA case." <u>Glazer v. Reliance Standard Life Ins. Co.</u>, 524 F.3d 1241, 1246 (11th Cir. 2008). The court's inquiry begins with a review of the "'plan documents to determine whether they grant the administrator discretion' in making the benefit determinations." <u>Id</u>.  The court next performs an initial de novo review to determine whether the benefits decision was "wrong." <u>Id</u>. at 1246-47.  The court decides, based on the "record before the administrator at the time its decision was made," whether the court would have reached the same conclusion as the administrator. <u>Id</u>. at 1246.  If the court determines that the

administrator's decision was not "wrong," the court ends its inquiry and enters summary judgment for the administrator. Id. at 1247.

If, on the other hand, the court concludes that the administrator's decision was "wrong," it then reviews the decision under the deferential "arbitrary and capricious standard." Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1356 (11th Cir. 2008). Under this so called, "abuse of discretion" standard, the court determines "whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." Glazer, 524 F.3d at 1246. As long as the decision had a reasonable basis, it "must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary conclusion." White v. Coca-Cola Co., 542 F.3d 848, 856 (11th Cir. 2008)(citation omitted). "If the 'evidence is close,' then the administrator did not abuse its discretion. Doyle, 542 F.3d at 1363.

Where the administrator is responsible for both deciding and paying benefits claims, it has a conflict of interest that the court must weigh during the arbitrary and capricious review. Id. at 1359-60. Here, Guardian concedes that a conflict of interest exists. The existence of a conflict, however, is merely "a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." Id. at 1360. Moreover, "while the reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by

self-interest." Id.  Even where there is a conflict of interest, courts still "owe deference" to the administrator's "discretionary decisionmaking."  Id. at 1363.

Under ERISA, the plaintiff has the burden of showing that she is entitled to benefits under the terms of the Plan.  Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998); Stvartak v. Eastman Kodak Co., 945 F.Supp. 1532, 1536 (M.D. Fla. 1996) aff'd, 144 F.3d 54 (11th Cir. 1998). The plaintiff's burden to prove disability is "the same whether or not the administrator denies a claim initially or decides to discontinue benefits after initially approving them."  Richards v. Hartford Life and Acc. Ins. Co., 356 F.Supp.2d 1278, 1284 (S.D. Fla. 2004), aff'd, 153 Fed.Appx. 694, 2005 WL 2888214 (11th Cir. 2005).

The Court has made a de novo review of the Plan documents and finds they do give Guardian, as the administrator, discretion in making benefit decisions.  (Doc. 1, page 20).

The parties discuss the same facts and make essentially (and probably unavoidably) the same arguments on the issues of whether Guardian's decision was "wrong" and if it was wrong, whether Guardian's decision can be sustained under the abuse of discretion standard.  In these cases some Courts have begun their analysis by assuming the plan administrator's decision was wrong and proceeded directly to the question whether the administrator's decision was arbitrary and capricious.  See Barchus v. Hartford Life and Accident Insur. Co., 320 F.Supp.2d 1266, 1285 (M.D. Fla. 2004)(assuming without deciding that decision was "wrong").  In this report and recommendation the Court will analyze the facts and the parties' arguments once in arriving at its conclusions that Guardian's decision was not wrong but even if had been

wrong, based upon the facts Guardian knew at the time, it did not abuse its discretion because its decision was not arbitrary and capricious.

Medical Evidence

Moeller makes much of the fact that her subjective complaints and her objective medical diagnosis worsened from the time her benefits were approved to the time they were discontinued. Moeller argues that Guardian's decision to terminate her benefits was wrong and arbitrary because "[t]here is no medical evidence to support any improvement or change in Moeller's condition or functional abilities at the time of Defendant's denial." (Doc. 30 at 9).

In making this argument, Moeller appears to disregard the well-settled law that Guardian had no obligation to show that her condition had worsened; rather, the burden remained with Moeller to establish that she was entitled to LTD benefits. See Doyle, 542 F.3d at 1362 (11th Cir. 2008)("Liberty Life had no obligation to explain as Doyle maintains, 'how Ms. Doyle's condition had changed on the 90th day.'").[5] At least two courts in the Middle District of Florida have rejected this very argument - i.e., that once benefits are approved, the burden shifts to the claims administrator to establish that the claimant is no longer disabled. See Barchus, 320 F.Supp.2d at 1286-87; Hufford v. Harris Corp., 322 F.Supp.2d 1345, 1360 (M.D. Fla. 2004).[6] The mere fact that Moeller's

---

[5]Moeller cites Watts v. Metropolitan Life Insur. Co., 2011 WL 1585000, at *15 (S.D. Cal. April 26, 2011) in which that court noted "[w]hen a plan administrator has been paying benefits, 'in order to find plaintiff no longer disabled, one would expect the [medical evidence] to show an improvement, not a lack of degeneration.'" Watts, 2011 WL 1585000, at *15.

[6] Nor is this a case of a claims administrator reversing its decision based on the exact same evidence before it when it first found a claimant to be totally disabled. Barchus, 320 F.Supp.2d at 1287. To the contrary, Guardian gathered additional evidence from which it could reasonably conclude that Plaintiff's condition did not prevent her from performing "any gainful

(continued...)

condition had stayed the same or worsened, does not render wrong or arbitrary, Guardian's decision to terminate her LTD benefits.

In support of its decision to terminate benefits, Guardian properly relied on the FCE conducted by Mr. Jacobsen.[7]  Courts have recognized that plan administrators routinely rely on FCEs, Townsend v. Delta Family-Care Disability and Survivorship Plan, 295 Fed.Appx. 971, 2008 WL 4507571, *5 (11th Cir. Oct. 8, 2008), and that an FCE is the "best means of assessing an individual's functional level." Lake v. Hartford Life and Acc. Ins. Co., 320 F.Supp.2d 1240, 1249 (M.D. Fla. 2004).

After performing a battery of tests, Mr. Jacobsen concluded that Moeller was capable of performing sedentary to light level work.  Moeller's own treating physician, Dr. Stanley, reviewed the FCE, and other than noting Moeller's self-reported pain and self-described limitations, agreed with the functional capabilities found in the FCE. "It is well-settled law that 'individuals capable of performing sedentary-to-light work are not totally disabled' under an 'any occupation' ERISA policy." Richey v. Hartford Life & Accident Insur. Co., 608 F.Supp.2d 1306, 1311-12 ( M.D. Fla. 2009)(compiling cases). Here, the Plan defines disability in terms of the claimant's inability to perform "any gainful work," which is comparable in meaning to "any occupation."  The FCE which shows Moeller can perform sedentary to light work supports Guardian's determination that Moeller was not disabled from any gainful work. See Muzyka v. UNUM Life Ins. Co.

---

6(...continued)
work." Id.

[7] Mr. Jacobsen is a physical therapist.  Although Moeller has not challenged Mr. Jacobsen's qualifications, the Court nonetheless notes that FCEs are "routinely conducted by physical therapists." Townsend v. Delta Family-Care Disability and Survivorship Plan, 295 Fed.Appx. 971, 2008 WL 4507571, *5 (11th Cir. Oct. 8, 2008).

of Am., 195 Fed.Appx. 904, 2006 WL 2613726, *4-5 (11th Cir. Sept. 13, 2006)(affirming summary judgment for administrator finding plaintiff was not disabled from "any gainful occupation" based in part on an FCE that "established [that plaintiff] could perform light to sedentary work.")

In addition to showing Moeller's functional work capacity, the FCE states that she demonstrated "multiple areas of inappropriate illness/behavior" and "[m]ultiple areas of inconsistency." Moeller argues that these findings should be disregarded because according to Dr. Ferencz, they have unclear "clinical significance." (Doc. 30 at 12-13). Guardian counters that these "attempts to manipulate the FCE" are significant because they "cast substantial doubt on [Moeller's] veracity and thus discredit her self-reported pain and symptoms." (Doc. 33 at 4). Guardian's position is supported by the opinion of Dr. Harris who disagreed with Dr. Ferencz and opined that "the significance of the inconsistencies is that they cast a doubt on the credibility of the claimant's expressed subjective symptoms." It was not arbitrary or wrong for Guardian to discredit Moeller's self-reported pain complaints and/or physical limitations based on her inconsistent effort or symptom exaggeration during the FCE. See Gannon v. Met. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)(upholding termination of benefits where claimant's FCE performance was "inconsistent in various ways" and thus, "provided evidence that [claimant] was exaggerating her symptoms.").

Guardian also properly relied on the peer review of Moeller's medical records conducted by Dr. Harris. In the ERISA context, an administrator is "entitled to rely on the opinion of a qualified consultant who neither treats nor examines the claimant, but instead reviews the claimant's medical records." Richey, 608 F.Supp.2d at 1312

(entering summary judgment for administrator based in part on opinions of reviewing physicians). Indeed, such reliance is "entirely appropriate" even where the reviewing physician's report "rebut[s] the opinion of the treating physicians asserting claimant is disabled." Hufford, 322 F.Supp.2d at 1359.

While not disputing that Guardian can rely on Dr. Harris' report, Moeller argues that the report is ambiguous and fails to establish that she can perform full-time work. Dr. Harris' report stated, among other things, that he did not see "anything in the record" that would "prevent her from working in some capacity." Focusing on the phrase "some capacity," Moeller contends that Dr. Harris may have meant that she was capable of "something less than full-time work" and thus, still disabled. (Doc. 30 at 14-16). Moeller's strained interpretation of Dr. Harris' phrasing is belied by the entire sentence from which the phrase "some capacity" was plucked. The complete sentence reads as follows:

> The functional capacity evaluation indicates the claimant is able to work with some restriction, I don't see anything in the record, including the EMG study, which would prevent her from working in some capacity, with no evidence that she is totally disabled from her diabetic neuropathy.

(G-180). Reading this sentence in its entirety, Dr. Harris clearly opined that the FCE showed Moeller is able to work "with some restriction" and that there is "no evidence that she is totally disabled." As discussed above, Moeller had the burden to show that she was entitled to LTD benefits; Guardian was entitled to rely on Dr. Harris' opinion that the requisite evidence was lacking.

Guardian's reliance on Dr. Harris' opinions over those of Dr. Ferencz was neither wrong nor arbitrary. While the claim administrator "may not arbitrarily refuse to credit

reliable evidence, [the administrator] is not required to accord deference to the opinions of treating physicians."  Williams v. Hartford Life and Acc. Insur. Co., No. 8:02-cv-85-T-17MAP,  2010 WL 557265, at *8 (M.D. Fla. Feb. 12, 2010)(citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)); Baker v. Hartford Life and Acc. Ins. Co., 371 F.Supp.2d 1352, 1363 (M.D. Fla. 2005).

Contrary to Moeller's contention, Dr. Ferencz's report is not inconsistent with Guardian's conclusion that she could perform sedentary work.  Dr. Ferencz opined that due to difficulties with gait and balance Moeller could not "regularly perform any type of job, which would require definite requirements for walking and standing or carrying objects." (G-220). This would not necessarily preclude sedentary work because it requires little or no standing and walking, and does not require lifting/carrying of more than 10 pounds on an occasional basis.  See Richey, 608 F.Supp.2d at 1311 n.2.

Dr. Ferencz's speculation regarding potential problems that could arise in the future is not relevant to whether Moeller was disabled as of the date Guardian terminated benefits.  Finally, to the extent Dr. Ferencz's opinion was based on Moeller's subjective complaints, Guardian was entitled to discredit those opinions based on the FCE results showing inconsistent effort or symptom exaggeration.  See Giertz-Richardson v. Hartford Life and Acc. Ins. Co., 536 F.Supp.2d 1280, 1292 (M.D. Fla. 2008)(an administrator need not credit treating physician opinions that are based on questionable subjective complaints).

Even if Dr. Ferencz's opinion supports a finding of disability under the Plan, the fact that "there is also some support for the Plaintiff's position does not render the Defendant's decision devoid of any basis in fact." Barchus v. Hartford Life and Acc. Ins.

<u>Co.</u>, 320 F.Supp.2d 1266, 1285 (M.D. Fla. 2004).

<u>Guardian's Labor Market Survey</u>

Guardian argues that its determination was also supported by the TSA and LMS in which it identified several occupations Moeller could perform.  (G. 249-56).  Such vocational evidence together with medical evidence is an "effective method of reaching an informed decision as to a claimant's work capability."  <u>Richey</u>, 608 F.Supp.2d at 1312.

The LMS conducted here, however, is of little, if any value because Guardian focused its analysis on New Jersey – where Moeller resided when she claimed and began receiving benefits – instead of Florida, where she had been living for more than two years when the LMS was performed.  Although neither party has cited any controlling case law, logic would hold that the LMS should be conducted in the market where the claimant would be seeking employment.[8]  Consequently, this vocational evidence is entitled to no weight in evaluating the reasonableness of Guardian's determination.

Moeller argues that she specifically objected to the location of the LMS during her administrative appeal, and Guardian's failure to conduct another LMS in Moeller's geographical area "undermines Defendant's claim it provided Moeller a full and fair review of her claim." Doc. 34 at 8.   But Guardian was under no obligation in the first place to provide vocational evidence to prove available occupations for Moeller.  <u>See</u> <u>Richey</u>, 608 F.Supp.2d at 1312 (an ERISA claim administrator applying an "any

---

[8] For example, wages for the occupations Guardian identified may be significantly higher or lower in Edison, New Jersey than in Inverness, Florida where Moeller resides.  If wages in Florida are lower, then it is possible none of these occupations would pay wages commensurate with 80% of Moeller's "indexed insured earnings."

occupation" type disability test has no obligation to "collect vocational evidence in order to prove there are available occupations for the claimant." ) That Guardian focused its inquiry on the state where Moeller lived at the commencement of her claim does not render its ultimate decision to deny her LTD benefits wrong or arbitrary, nor did it deprive Moeller of a full and fair review of her claim.

<u>Social Security Administration's Disability Award</u>

Contrary to Moeller's contention, Guardian did not ignore the fact that the Social Security Administration ("SSA") awarded her disability benefits. In its denial letter Guardian specifically acknowledged the SSA's disability award and explained that SSA benefit determinations are based on federal statutes whereas Guardian's decision was based on the Plan language. (G. 235).

The ALJ's finding of disability in Moeller's Social Security case does not render Guardian's decision to terminate her LTD benefits arbitrary and capricious. The standards governing disability determinations under the Social Security Act and those under ERISA differ, and thus, an ERISA plan administrator is not bound by a disability determination under the Social Security Act. <u>See</u> <u>Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co.</u>, 230 F.3d 415, 420 (1st Cir. 2003); <u>Coker v. Met. Life Ins. Co</u>, 281 F.3d 793, 798 (8th Cir. 2002); <u>Williams v. Metropolitan Life Ins. Co.</u>, 2010 WL 936147, *8 (D.N.J. March 12, 2010); <u>see</u> <u>also</u>, <u>Paramore v. Delta Air Lines, Inc.</u>, 129 F.3d 1446, 1452, n.5 (11th Cir. 1997)(noting that while a court may consider an award of benefits by the SSA it is not dispositive especially in light of deference afforded a plan administrator's decision.). Guardian also had the FCE and Dr. Harris' report to support its decision to terminate LTD benefits. This information was not available to the SSA

when it made its determination.  See Black v. Long-Term Disab. Ins., 582 F.3d 738, 748 (7th Cir. 2009).  Thus, it was not wrong or arbitrary and capricious for Guardian to reach a conclusion different from the SSA.

Surveillance Video

Moeller argues that she was denied a full and fair review because Guardian failed to disclose the surveillance film in its initial denial letter.  Doc. 30, page 19.  The Court has reviewed the surveillance film and finds that it offers little, if any, support for Guardian's termination of benefits.

With that said, ERISA requires that an administrator notify a claimant of an adverse benefits decision in a manner that describes the specific reasons for the decision and gives the claimant a fair opportunity to appeal the decision and receive a full and fair review.  Cook v. Standard Ins. Co., 2010 WL 807443, *14 (M.D. Fla. March 4, 2010).   The Eleventh Circuit "requires only substantial compliance" with ERISA's notice procedures, which means the notice must provide a "sufficiently clear understanding of the administrator's position" to permit effective review and the claimant "understands what additional materials to provide in order for the appeals process to prove effective."  Id. (quoting Bojorquez v. E.F. Johnson Co., 315 F.Supp.2d 1368, 1373 (S.D. Fla. 2004).

Guardian's initial denial letter advised Moeller as to all relevant provisions of the Plan; cited the FCE, the LMS, TSA, and Social Security Administration disability finding; advised that she was no longer considered disabled because the FCE "has assessed you at a sedentary work capability level;" informed her of her right to appeal the decision; and advised her that she would need to "provide Guardian with medical

20

evidence" supporting her claimed disability from December 23, 2007 continuing forward. (G. 234-38). Since this letter provided Moeller sufficient notice of the reason for denial of her LTD benefits and notice that she had to submit medical evidence of an impairment that would preclude her from performing sedentary work, it was "sufficient to comply with ERISA." Cook, 2010 WL 807443, *18.

Given the amount of evidence contained in the administrative record which shows Moeller is capable of sedentary-to-light work Guardian was not wrong to deny her continued LTD benefits.

Conflict of Interest

Alternatively, if Guardian's decision had been wrong, this Court would have to analyze its admitted conflict of interest. There is nothing in the totality of the circumstances that indicates that Guardian's conflict of interest was a major factor in its decision. There is no evidence of a pattern of biased decisions by Guardian . As discussed above, Guardian investigated the case thoroughly,[9] developed a complete record and its decision is well supported by the administrative record. Guardian took numerous measures to ensure objectivity by seeking independent reviews of Moeller's medical records and seeking comments from treating doctors regarding Moeller's FCE and Dr. Harris' peer review. For these reasons, the Court accords little weight to Guardian's conflict.

---

[9] Moeller argues that Guardian failed to conduct a thorough investigation as required by ERISA based on its (1) failure to obtain any medical opinion that Moeller is capable of full time gainful employment; (2) failure to give proper weight to the opinions of Dr. Ferencz; (3) failure to give proper consideration to the SSD disability determination; and (4) use of the LMS in New Jersey to deny benefits. Doc. 30 at 19-20. As discussed above, none of these arguments have merit.

Considering the amount of information Guardian obtained from its own experts, Dr. Stanley's concurrence in the functional capabilities assessment in the FCE, the evidence that Moeller was exaggerating her symptoms, and the lack of any evidence suggesting Guardian's conflict of interest played a part in the process, this Court concludes that Guardian's decision was not arbitrary and capricious.

## IV.  RECOMMENDATION

After considering the record as a whole, the undersigned cannot find, even accounting for Guardian's conflict, that Guardian's decision to discontinue Moeller's LTD benefits was wrong or arbitrary and capricious.  Thus, it is respectfully RECOMMENDED that

1.     Defendant's Dispositive Motion For Summary Judgment (Doc. 29) be
       GRANTED; and

2.     Plaintiff's Motion For Summary Judgment (Doc. 30) be DENIED.

IN CHAMBERS in Ocala, Florida, on December 14, 2011.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

        The Honorable Marcia Morales Howard
        United States District Judge

        Counsel of Record